*MURUGESAN SUBBAIAH*
P. O. Box 502925
Saipan, MP  96950
Tel.:   (670) 788-0968

*Pro Se Plaintiff*

Prepared with the assistance
of the law offices of
Stephen C. Woodruff

F I L E D
Clerk
District Court

OCT 1 4 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| MURUGESAN SABBAIAH, <br><br> Plaintiff, <br><br> -v- <br><br> L&T GROUP OF COMPANIES, LTD., and GTS SECURITY AGENCY, <br><br> Defendants. | Civil Action No. 08- **-0044** <br><br><br> COMPLAINT |

Plaintiff, by himself, alleges as his Complaint against Defendants as follows:

## I
## NATURE OF THE ACTION

1.  This is an action against Defendants under Title VII of Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e to 20003-17, and under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12112-12117 (as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166), for their unlawful and discriminatory employment practices towards Plaintiff in violation of Plaintiff's federally-protected rights.

\\

\\

## II
## JURISDICTION AND VENUE

2. Title VII of Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e to 20003-17 and the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12112-12117 (as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166), apply to this matter through the COVENANT TO ESTABLISH A COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS IN POLITICAL UNION WITH THE UNITED STATES OF AMERICA, Article V, § 502(a)(2).

3. This Court has jurisdiction over Plaintiff's Title VII and ADA claims pursuant to 28 U.S.C. § 1331(a) (federal question jurisdiction) and 28 U.S.C. § 1337(a) (proceedings arising under any Act of Congress regulating commerce).

4. This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. §§ 2000e-5(f)(1) and (3)), and Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

5. The employment practices alleged herein to be unlawful and discriminatory were committed in Saipan, Commonwealth of the Northern Mariana Islands, and consequently venue in this Court is proper pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

## III
## PROCEDURAL REQUIREMENTS

6. On or about September 17, 2004, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in Saipan, Commonwealth of the Northern Mariana Islands. The charge was filed within one hundred eighty (180) days after the occurrence of one or more of the unlawful employment practices alleged herein pursuant to 42 U.S.C. § 2000E-5(e)(1).

7.   On or about July 14, 2008, the EEOC issued the Plaintiff a Notice of Right to Sue letter, stating that Plaintiff could file an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12112-12117. Plaintiff filed his complaint herein within ninety (90) days after the date on which he received the Notice of Right to Sue in compliance with 42 U.S.C. § 2000e-5(f)(1).

8.   Consequently, all jurisdictional prerequisites to the institution of this lawsuit have been fulfilled, and Plaintiff has exhausted his administrative remedies as required by law.

## IV
## PARTIES

9.   Plaintiff is, and at all relevant times alleged herein was, a citizen of India residing in Saipan, CNMI.

10.   Plaintiff is, and at all relevant times, was suffering from heart disease and effects of heart surgery that substantially limit one or more of Plaintiff's major life activities and which are form of "disabilities" as defined in 42 U.S.C. § 12102(2).

11.   Plaintiff is, and at all relevant times, was a "qualified individual with a disability" as defined in 42 U.S.C. § 12111(8) and who, with or without reasonable accommodation, can perform the essential functions of his employment classification as a security guard, with either defendant or any other employer.

12.   Defendant **L&T GROUP OF COMPANIES, LTD. (L&T)**, on information and belief, is, and all times relevant hereto was, a corporation organized and existing under the laws of the CNMI having its principal place of business on Saipan, CNMI, and was an employer of Plaintiff as defined under 42 U.S.C. § 2000e (f).

13.   Defendant **GTS SECURITY AGENCY (GTS)**, on information and belief, is, and at all times relevant hereto was, a corporation organized and existing under the laws of the

1  CNMI, with its principal place of business on Saipan, CNMI, and was, or was to be, an employer
2  of Plaintiff as defined under 42 U.S.C. § 2000e (b).
3      14.    At all relevant times, Defendants L&T and GTS have continuously been engaged
4  in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e(g) and 29 U.S.C. §
5  630(g).

## V
## STATEMENT OF FACTS

15. Plaintiff was employed by Defendant L&T as a security guard beginning on March 21, 1997, working up to March 15, 2007, pursuant to written employment contracts approved by the Commonwealth of the Northern Mariana Islands Department of Labor (DOL). Plaintiff's last nonresident employment contract with L&T expired on July 14, 2007.

16. On or about March 21, 2007, Plaintiff, on medical referral and with the knowledge of Defendant L&T, travelled the Philippines for medical treatment concerning a heart ailment. On April 21, 2007, Plaintiff underwent heart surgery in the Philippines.

17. Upon Plaintiff's return to Saipan on or about May 9, 2007, Plaintiff reported to Mr. Joaquin Torres, Human Resources director for Defendant L&T, and Mr. Ely Arago, then comptroller for Defendant L&T, to inform them that he was back, but had been advised by his Philippine doctor to rest for a while. Plaintiff showed the two officials a doctor's certificate to that effect. Plaintiff also informed Mr. Torres and Mr. Arago about his intention to resume work as soon as possible.

18. Plaintiff at this time that I learned that the garment section had already closed and that GTS Security Services (Defendant GTS) had taken over the security for the company. Mr. Torres told Plaintiff that he should my rest not worry because L&T will take care of Plaintiff's needs, including his medical expenses.

19. On various dates in May, 2007, Plaintiff went repeatedly to the Commonwealth Health Center (CHC) to undergo regular medical check-ups and physical therapy pursuant to the advice of his attending physician in the Philippines. During one of those medical visits, Plaintiff was told that Defendant L&T has stopped its medical insurance coverage for its employees.

20. On or about May 23, 2007, Plaintiff talked to Mr. Torres again. Plaintiff first asked him about his medical bills at CHC and if Plaintiff can be transferred by Defendant L&T to Defendant GTS as were other Filipino and Bangladeshi security guards who were transferred sometime in April, 2007, while Plaintiff was in the Philippines. At the time, Mr. Torres told Plaintiff, to just continue to rest and not to worry as he would be given a job when completely rested.

21. Plaintiff is informed and believes, and on that basis alleges, that Defendant L&T had contracted, sometime in April, 2007, with Defendant GTS for its security needs, and that around that time, Defendant L&T transferred all its security guards except Plaintiff to Defendant GTS.

22. Plaintiff asked Mr. Torres as to who would support him for his daily subsistence and expenses for continuing medical treatment and physical therapy in Saipan. Mr. Torres told Plaintiff not to worry and assured Plaintiff that they will provide for his needs and will take care of his medical expenses. Notwithstanding Mr. Torres' promise, Plaintiff has since been receiving medical bills in connection with his continuing medical treatment and physical therapy. On information and belief, Defendant L&T had stopped paying Plaintiff's medical bills at CHC.

23. On or about May 30, 2007, Plaintiff talked to Mr. Torres again and followed up on his transfer. Mr. Torres gave Plaintiff a letter addressed to Defendant GTS and asked Plaintiff to go to Defendant GTS' office himself. Plaintiff went to the office of Defendant GTS office and showed Defendant L&T's letter. Personnel of Defendant GTS assured Plaintiff that he will be

1  transferred. Plaintiff repeatedly made several follow-ups with Defendant GTS, but was
2  repeatedly promised.

3      24. Meanwhile, on various dates in June and July, 2007, Plaintiff continued to visit
4  CHC for his continuing medical treatment and physical therapy. During one of those visits, a
5  CHC staffer told Plaintiff that that his medical appointment has been cancelled because "L&T
6  has no more money." Plaintiff thereafter went to and sought the assistance of Atty. Pam Brown
7  who referred Plaintiff to a lady attorney at the CNMI Office of the Attorney General. The
8  attorney accompanied Plaintiff to CHC and spoke to certain hospital personnel, after which CHC
9  resumed providing Plaintiff with medical services. However, Plaintiff continued to receive the
10 medical bills which were all addressed to Plaintiff.

11     25. On or about July 7, 2007, Plaintiff went again to see Mr. Torres and followed up
12 on Defendant L&T's promised transfer to Defedant GTS. Mr. Torres sent Plaintiff over again to
13 Defendant GTS. At the GTS office, a staffer told Plaintiff that he is very weak and that they
14 cannot hire him. Plaintiff was surprised as he did not undergo any medical examination required
15 either by Defendant GTS or Defendant L&T that could have provided a medical basis for a
16 statement that Plaintiff is "very weak."

17     26. Based on these facts and events, Plaintiff reasonably concludes that he has been
18 discriminated against based on his national origin and disability by both Defendant L&T and
19 Defendant GTS. Such discriminatory practices deprived Plaintiff of equal employment
20 opportunities and affected his status as an employee. While Defendant L&T's former Filipino
21 and Bangladeshi security guards were transferred by Defendant L&T to Defendant GTS,
22 Plaintiff, an Indian national, was not. Plaintiff further reasonably concludes that Defendant GTS
23 classified Plaintiff, a job applicant, in a way that adversely affected his employment opportunity
24 with Defendant GTS due to my disabilities.
25

27. Plaintiff also reasonably concludes that as a result of Defendant L&T's contracting out its security to Defendant GTS, Plaintiff was subjected to discriminatory acts by Defendant GTS due to Plaintiff's disability.

28. Defendant GTS also failed to provide reasonable accommodation to any perceived physical limitation of Plaintiff which Defendant GTS based on information or communications from Defendant L&T.

## VI
## CAUSES OF ACTION

### First Cause of Action
Violation of ADA

29. Paragraphs 1 through 28 above are incorporated herein by reference as if fully pleaded in this First Cause of Action.

30. Defendant L&T's failure and refusal to make provision for and pay Plaintiff's medical care according to the applicable standard terms and conditions of employment, because of his disability constitutes an unlawful employment practice in violation of 42 U.S.C. § 12112

31. Defendants' unlawful and discriminatory practices because of disability as alleged above deprived Plaintiff of equal employment opportunities or otherwise adversely affected his status as an employee.

32. Defendants engaged in the above-described conduct against Plaintiff with malice and in reckless disregard of Plaintiff's federally-protected rights thereby entitling Plaintiff to punitive damages in an amount to be determined at trial.

### Second Cause of Action
Refusal to Hire based on Disability

33. Paragraphs 1 through 28 above are incorporated herein by reference as if fully pleaded in this Second Cause of Action.

34. The acts alleged above, including Defendant GTS's failure to give reasonable accommodation for Plaintiff's disability, constitute unlawful employment practice in violation of 42 U.S.C. § 2000e-2(a)(1).

35. Defendant GTS's refusal to hire Plaintiff on account of his disability constitutes unlawful employment practice in violation of 42 U.S.C. § 2000e-2(a)(1).

36. Defendants' employment practices as alleged above deprived Plaintiff of equal employment opportunities and otherwise adversely affected his status as an employee. Plaintiff has suffered, and is entitled to recover, lost earnings and other damages as a result of Defendant GTS's refusal to hire him on account of his disability.

37. Defendant L&T is equally liable with Defendant GTS for the unlawful employment practice alleged herein on account of unjustifiably supplying Defendant GTS with information leading to Defendant GTS's conduct or otherwise encouraging that conduct or conspiring with Defendant GTS to violate Plaintiff's federally-protected rights.

38. Defendants engaged in the above-described conduct against Plaintiff with malice and in reckless disregard of Plaintiff's federally-protected rights thereby entitling Plaintiff to punitive damages.

### Third Cause of Action
### Discrimination Based on National Origin

39. Paragraphs 1 through 28 above are incorporated herein by reference as if fully pleaded in this Third Cause of Action.

40. The acts alleged herein constitute unlawful employment practice under 42 U.S.C. § 2000e-2(a)(1)(2).

41. Defendants' unlawful and discriminatory practices as alleged above deprived Plaintiff of equal employment opportunities or otherwise adversely affected his status as an employee due to their national origin.

42. As a direct and proximate result of Defendants' unlawful and discriminatory practices based on national origin, Plaintiff has suffered and continues to suffer loss of earnings and other employment benefits which he otherwise would have earned.

43. In engaging in the above-described conduct, Defendants have acted maliciously and with reckless disregard of Plaintiff's federally protected rights thereby entitling Plaintiff to punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court for the following relief:

(1) For an award of economic damages in the form of front pay, lost benefits, pecuniary losses, compensatory damages, and punitive and other damages, all according to proof under the First Cause of Action;

(2) For an award of economic damages in the form of front pay, lost benefits, pecuniary losses, compensatory, punitive, and other damages according to law and proof under the Second Cause of Action;

(3) For an award of compensatory, punitive, and other damages according to law and proof under the Third Cause of Action;

(4) For an award of amounts due and payable for medical and therapeutic services and expenses;

(5) For an award of costs, including reasonable attorney's fees; and

(6) Such other and further relief as this Court deems fit and proper.

DATED this 10th day of October, 2008.

_S. Murugesan_
MURUGESAN SUBBAIAH

EEOC Form 161 (2/08)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Murugesan Subbaiah<br>P.O. Box 502925 Ck<br>Saipan, MP 96950 | From: | Honolulu Local Office<br>300 Ala Moana Blvd<br>Room 7-127<br>Honolulu, HI 96850 |
|---|---|---|---|

[ ]    *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 486-2008-00120 | James Yao, Investigator | (808) 541-3720 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____      7/14/08
Timothy A. Riera,     *(Date Mailed)*
Director

Enclosures(s)

cc: Colin Thompson, Esq.
Attorney
L&T INTERNATIONAL
PMB 917 Box 10001
Saipan, MP 96950

EXHIBIT "1"